IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40658
_____

JAMES PAUL JOHNSON,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director,
Texas Department of Criminal
Justice, Institutional Division,

Respondent-Appellee.
_____

Appeal from the United States District Court for the
Eastern District of Texas
USDC No. 6:95-CV-206
_____
April 2, 1997

Before JOLLY, JONES, and WIENER, Circuit Judges.

PER CURIAM:[*]

James Paul Johnson appeals the district court's denial of his habeas corpus petition. For the reasons stated below, we affirm the judgment of the district court.

I

James Paul Johnson was convicted in 1992 for burglary of a habitation and is serving a life sentence in the custody of the Texas Department of Criminal Justice, Institutional Division as an habitual offender. The underlying facts are reported in the

_____

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

opinion of the state appellate court affirming the conviction and sentence on direct appeal:

> [T]he home of Jackie and Caroline Barker was burglarized on June 6, 1991. On the same day, Appellant visited for about five minutes at the home of the next door neighbor, U. Z. Bell, inquiring after Barker and his family. A more distant neighbor saw an automobile like Appellant's parked at the Barker mobile home, although he could not identify Appellant as the car's driver. U. Z. Bell identified Appellant's photograph as the photograph of the man who had visited him and asked about the Barkers on the day of the burglary. Appellant was a former in-law of Jackie Barker and was well known to him. A warrant was issued for Appellant's arrest.
>
> Seventeen days later, a highway patrol officer in Ozona stopped Appellant in an unrelated charge. Appellant initially gave a false name. Deputy Sheriff Tim Hooten went to Ozona from Rains county to arrest Appellant for the Barker burglary. In Ozona, Hooten gave Appellant a <u>Miranda</u> warning, and then asked Appellant's permission to search the car he had been driving when arrested. Appellant consented to the search, provided he was allowed to be present. The search disclosed a camera, a coin purse, and a Crown Royal bag, all items taken in the burglary of the Barker residence.

Johnson filed a petition seeking a writ of habeas corpus in the district court. The respondent answered, conceding that Johnson had exhausted his state remedies. The magistrate judge recommended that the petition be denied. The district court adopted the recommendation of the magistrate judge, and entered judgment dismissing the petition. Johnson gave notice of his appeal. The district court issued a certificate of probable cause (a "CPC") for an appeal.

## II

Johnson attacks his conviction on four grounds. First, he maintains that the indictment against him was defective and that the defect deprived the trial court of jurisdiction. Second, Johnson contends that the prosecutor made unfair reference to his failure to testify at trial in contravention of his Fifth Amendment rights. Third, Johnson contends that the evidence was insufficient to convict him. Fourth, Johnson maintains that he received ineffective assistance of counsel. Before we address the merits of the case, however, we must determine whether this case is properly before the court given the amendments to 28 U.S.C. § 2253 effected by the Antiterrorism and Effective Death Penalty Act.

## III

The Antiterrorism and Effective Death Penalty Act (Pub.L. 104-132, 110 Stat. 1214)(the "Act") was signed into law on April 24, 1996. Title I of the Act addresses habeas corpus reform. Section 102 of the Act amended 28 U.S.C. § 2253 to require a prisoner in state custody to obtain a "certificate of appealability" (a "COA") before proceeding with an appeal. 28 U.S.C. § 2253(c)(1)(A). Prior to the adoption of the Act, a prisoner was required to obtain a CPC before his appeal could proceed.

A COA may issue only if the applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. This language varies slightly from that used to define the

standard for granting a CPC.[1]  Nevertheless, we have determined that the standard for granting a CPC and a COA are the same. Drinkard v. Johnson, 97 F.3d 751, 756 (5th Cir. 1996).  Therefore, a court may treat an application for a CPC as an application for a COA.  See Drinkard, 97 F.3d at 756.

Nevertheless, additional concerns are raised when a prisoner has been granted a CPC prior to the adoption of the Act.  We cannot simply treat a previously granted CPC as a COA.  The Act introduced an additional requirement for issuing a COA: a judge granting a COA must specifically identify the issues upon which the COA is being issued.  Therefore, a CPC could only be treated as a substitute for a COA if the granting judge fortuitously identified the issues upon which the CPC was granted.  Because most CPCs do not identify the issues upon which they were granted, we are forced to either refuse the prisoner's appeal until a COA is obtained pursuant to the Act, or refuse to give retrospective application to this narrow portion of the Act.

In Brown v. Cain, No. 95-30870, 1997 WL 20736 (5th Cir. Jan. 21, 1997) we resolved this question, holding that an appellant who has obtained a CPC before the Act was adopted is not required to also obtain a COA.  In making this determination, we applied the

_____

[1]In Barefoot v. Estelle, 463 U.S. 880, 103 S.Ct. 3383 (1983), the Court stated the standard governing the issuance of a CPC: the applicant must make "a substantial showing of the denial of a federal right."  Id. at 893 (emphasis added).

analysis established in <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 114 S.Ct. 1483 (1994).

Under the <u>Landgraf</u> approach, we begin by determining whether Congress evinced a clear intent to have the statute apply retrospectively. Section 2253 gives no indication that Congress intended that it be given retrospective application.[2] Accordingly, we proceed to determine whether the statute is of the type that may be applied retrospectively.

A statute is not to be applied retrospectively if doing so would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." <u>Landgraf</u>, 511 U.S. at

---

[2] Section 2253, as amended by the Act, states as follows:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --

    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .

    (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. §2253.

This language reveals no Congressional intent that the statute should apply retrospectively. Likewise, a thorough examination of Title I of the Act, in its entirety reveals no intent to require retrospective application. Similarly, the legislative history of the Act reveals no mention of retrospective application.

1505.  This test is designed to protect individuals from having their "settled expectations" being swept away, without fair warning.

In Brown, we noted that "[the appellant] had requested and received the right to appeal; his 'settled expectation' was that he had successfully passed all procedural hurdles to this court's consideration of his clams." Brown, 1997 WL 20736.  Brown concluded that when a prisoner had obtained a CPC before the adoption of the Act, the Act would not be retrospectively applied, and the prisoner could proceed with an appeal without also obtaining a COA. Brown clearly governs this case. Therefore, the Act will not be retrospectively applied to Johnson, and he may proceed with his appeal without obtaining a COA.  Accordingly, we proceed to the merits of the case.

IV

A

*Defective Indictment*

The state indictment initially alleged that the burglary was committed in Hopkins County.  Subsequently, the clerk crossed out "Hopkins" and wrote in "Rains" without the trial court's authorization.  Johnson contends that this action rendered the indictment fundamentally defective, and that this defect deprived the trial court of jurisdiction. See Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988)(In reviewing a habeas petition, this court is not free to review the sufficiency of a state criminal

indictment unless the defect robbed the trial court of jurisdiction.).

If the question of the sufficiency of the indictment is presented to the highest state court, consideration of the question is foreclosed in federal habeas corpus proceedings. Id. This issue was presented to the Texas Court of Criminal Appeals in Johnson's state habeas petitions. The state court denied the applications without written orders. Hence, we decline to review this issue.[3]

B

<em>Unfair comment on failure to testify</em>

During his closing argument, the state prosecutor stated:

> What does he have in the car? He's got a camera; he's got a bracelet; he's got a coin purse; and, he's got that Crown Royal bag.
>
> Where did they come from?
>
> From Jackie Barker's house.
>
> That was never challenged that these items right here didn't come from Jackie Barker's house.

The defendant's counsel objected that the argument constituted an impermissible reference to Johnson's failure to testify. The trial court overruled the objection. Johnson contends that the

---

[3]The magistrate judge also took judicial notice that the Texas trial court had jurisdiction over both Rains and Hopkins Counties and concluded that the trial court could not have been deprived of jurisdiction by the typographical error in the indictment.

prosecutor's remark deprived him of his due process right to a fair trial.  We are unpersuaded.

This court has held that such a reference is well within the bounds of the Fifth Amendment.  "The Fifth amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify.  A prosecutor may comment, however, on the failure of the defense, as opposed to the defendant, to counter or explain the evidence." United States v. Borchardt, 809 F.2d 1115, 1119 (5th Cir. 1987) (internal citations omitted).  "A statement violates the Fifth Amendment if the prosecutor intended to comment on the defendant's failure to testify or if a jury would naturally and necessarily interpret the prosecutor's remarks in that light." Montoya v. Collins, 955 F.2d 279, 286-87 (5th Cir.1992)(internal quotations omitted).  The jury would not naturally and necessarily interpret the prosecutor's remark as a comment on Johnson's failure to testify.  The prosecutor's argument was not improper.

C

*Sufficiency of the evidence*

Johnson challenges the sufficiency of the evidence presented to prove his guilt. The standard for testing the sufficiency of the evidence in a federal habeas review of a state court conviction is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2791-92 (1979). This standard must be applied with reference to the substantive elements of the criminal offense as defined by state law. Isham v. Collins, 905 F.2d 67, 69 (5th Cir. 1990). At the time Johnson committed the offense, Texas Penal Code provision § 30.02 defined the elements of burglary, in pertinent part, as follows:

> (a) A person commits [burglary] if, without the effective consent of the owner, he:
>
> > (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or . . . ;
> >
> > (3) enters a building or habitation and commits or attempts to commit a felony or theft.
> > . . . .
> (d) An offense under this section is a felony of the first degree if:
>
> > (1) the premises are a habitation . . . .

Tex. Penal Code Ann. § 30.02 (West 1994).

Where "a state appellate court thoughtfully reviews the issue of sufficiency of the evidence, that court's determination is entitled to 'great weight.'" Parker v. Procunier, 763 F.2d 665, 666 (5th Cir. 1985)(citation omitted). Review of the state appellate court's opinion reveals that the court thoughtfully considered Johnson's challenge to the sufficiency of the evidence. Because Johnson "was in unexplained possession of items taken from the Barker's home seventeen days after the burglary" and because Johnson "was at the Barker home on the day of the burglary [and] knew the victims," the state appellate court held that "the evidence was sufficient for a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt."

Johnson argues that the jury could not have reasonably concluded that he was present at the Barker house and that the items seized from his car were the items taken from the Barker house. The evidence is to the contrary.

U. Z. Bell positively identified Johnson as the person who came to his house and asked about the Barker residence. Jackie and Caroline Barker both testified that Johnson did not have permission to come into their house. Jackie Barker further testified that he gave a list of items missing from his home to the sheriff's department. After Johnson's arrest, Barker went to the sheriff's office and identified several of the stolen items. Caroline Barker testified that she kept jewelry in a Crown Royal bag. She also identified a rubberized coin purse, a charm bracelet and the

camera.  Deputy Tim Hooten testified that he seized all of the above items from Johnson's automobile.  A reasonable juror could convict Johnson on the basis of this testimony.

In the light of the evidence presented and the deference given to the state court's assessment of such evidence, we find that the evidence was sufficient to convict the defendant.

D

*Ineffective assistance of counsel*

Johnson contends that he received ineffective assistance of counsel at trial.  In order to prove that his counsel was ineffective, Johnson must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  To show deficient performance, Johnson must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. "[T]he 'prejudice' component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  Id. at 689.  A court need not address both components if the petitioner makes an insufficient showing on one.  Id. at 697. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional

-11-

judgments support the limitations on investigation." <u>Black v. Collins</u>, 962 F.2d 394, 401 (5th Cir. 1992)(internal quotations and citation omitted).

Johnson contends that he told his attorney to contact a witness, James Everet Sills, who would testify that he was present when Johnson purchased the thirty-five millimeter camera. The magistrate judge determined that this claim was without merit because Johnson had failed to show that the existence of the witness was brought to the attention of Johnson's attorney.[4] The magistrate judge noted that Johnson's contention was undermined by the Barkers' positive identification of the camera. Because Johnson failed to establish the facts underlying this ineffective-assistance claim, he has not shown that his attorney was professionally unreasonable in failing to investigate this witness.

Johnson also contends that his attorney should have requested a curative instruction regarding the legality of the search and seizure. Under state law at the time of the trial, when the evidence raised an issue regarding the legality of a search and seizure, the jury should be instructed to disregard any evidence obtained through the search and seizure if it believes there is a reasonable doubt whether the search and seizure was legal. Tex. Code Crim. Proc. art. 38.23(a) (West Supp. 1996). In his brief to

---

[4]The magistrate judge also noted that Johnson had failed to demonstrate that Sills was available for trial. In his affidavit, Sills stated that he was a longtime Texas resident and that he would have been willing to testify at Johnson's trial.

this court, Johnson did not explain why he believes that the search and seizure were illegal. Johnson argued in his brief in the district court that his testimony at the suppression hearing demonstrated that the search was nonconsensual. Johnson may not incorporate this argument in his appellate brief by reference. See Yohey v. Collins, 985 F. 2d 222, 225 (5th Cir. 1993) (holding that appellant could not incorporate in his brief his arguments from other pleadings). In any event, the argument does not establish that his counsel acted unprofessionally. The defendant's counsel litigated the suppression motion. Deputy Hooten testified that Johnson consented to the search of the vehicle. Although Johnson denied that he had consented to the search, the trial court credited Hooten's testimony--not an unreasonable decision considering Johnson's nine prior felony convictions. It was not professionally unreasonable for Johnson's lawyer to fail to request an instruction, and there is no reason to believe that the trial court would have given the instruction if it had been requested.

Johnson contends that his attorney rendered ineffective assistance in failing to request an instruction on circumstantial evidence.[5] In Hankins v. State, 646 S.W.2d 191, 197-200 (Tex. Crim. App. 1983) (opinion on rehearing) the Texas Court of Criminal Appeals abolished Texas's circumstantial evidence charge. Under that charge, juries were instructed to exclude, to a moral

---

[5]Again, Johnson attempts to incorporate his district court briefing by reference.

certainty, every other reasonable hypothesis except the defendant's guilt.  In <u>Geesa v. State</u>, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991) (en banc) the court rejected the reasonable hypothesis analysis for review of the sufficiency of circumstantial evidence, directing appellate courts to apply instead the rationality standard of <u>Jackson</u>.  Johnson's attorney was not professionally unreasonable in failing to request a circumstantial evidence charge.

For the reasons stated in this opinion, the judgment of the district court is

A F F I R M E D.